IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD H. NIESTER, II and | : | CIVIL ACTION |
| NBT, LLC | : | |
| | : | |
| v. | : | |
| | : | |
| EVA MOORE, ET AL. | : | NO. 08-5160 |

O'NEILL, J.                                                                      July   22 , 2009

## MEMORANDUM

This action was transferred to this Court on October 29, 2008 from the United States District Court for the Eastern District of Michigan. On December 30, 2008, plaintiffs Gerald H. Niester, II and NBT, LLC filed an amended complaint against defendants Eva Moore, Amanda Butts, Most Focus, LLC and TD Bank N.A.,(formerly Commerce Bankcorp.).

On or about January 27, 2009, Niester and NBT served defendant TD Bank with a request for the production of documents. On January 29, 2009, TD Bank filed its answer to the complaint. On February 23, 2009, I granted Niester and NBT's motion for default judgment against Moore, Butts and Must Focus for failing to appear, plead or otherwise defend. On March 2, 2009, TD Bank replied to Niester and NBT's request for the production of documents with the objections of privacy and relevance. Presently before me is Niester and NBT's motion to compel discovery, filed on May 4, 20009, and TD Bank's response thereto.[1]

---

[1] Niester and NBT's counsel, in accordance with Local Rule 26.1(f), has certified that the parties have made reasonable efforts to resolve their dispute prior to filing this motion to compel.

BACKGROUND

Niester is a citizen of Michigan. NBT is a Michigan limited liability corporation. Moore and Butts are citizens of Pennsylvania. Must Focus LLC is a Pennsylvania limited liability corporation. TD Bank is the successor in interest to the original defendant, Commerce Bankcorp, a New Jersey corporation with its principle place of business in New Jersey.

Niester and NBT's allege that Moore, her company Must Focus and her associate Butts, used Moore's capacity as an agent of various wireless telephone companies to defraud Niester and NBT out of money and wireless telephone merchandise. The only way Moore, Must Focus and Butts allegedly defrauded Niester and NBT which involved TD Bank was by allegedly intercepting commission checks for "NBT LLC" and fraudulently depositing those checks into an account set up by Moore with TD Bank which was named "NBT Links Right Price."[2] Count VII of the amended complaint, the only count to name TD Bank, alleges that TD Bank was negligent and in violation of the UCC, 13 Pa. C.S. § 3404, for allowing the creation of the account without doing due diligence and for accepting deposit of checks made out to plaintiff "NBT, LLC" into the account named "NBT Links Right Price."

STANDARD OF REVIEW

Rule 37(a) authorizes this Court to compel a party to comply with a discovery request or face sanctions as set forth in Rule 37(b)(2).

---

[2] Niester and NBT's original request for discovery sought documents for an account named "NBT Links Right Price Wireless." TD Bank, in its original response, noted that no such account existed but informed Niester and NBT that the account which they were seeking was likely named "NBT Links Right Price." Niester and NBT's motion to compel discovery uses the corrected account name and I will assume that requests for the compelled discovery are for "NBT Links Right Price" and not "NBT Links Right Price Wireless."

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "parties may obtain discovery of any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discovery need not be confined to matters of admissible evidence but may encompass that which "appears reasonably calculated to lead to the discovery of admissible evidence." Id. It is well established that Rule 26 establishes a liberal discovery policy. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U.S. 495, 507-08 (1947); Great W. Life Assurance Co. v. Levithan, 152 F.R.D. 494, 497 (E.D. Pa. 1994).

As a general rule, therefore, discovery is permitted of any items that are relevant or may lead to the discovery of relevant information. Hicks v. Big Bros./Big Sisters of Am., 168 F.R.D. 528, 529 (E.D. Pa. 1996). The facts and circumstances of a case determine and limit the relevancy of information sought in discovery. Cont'l Access Control Sys., Inc. v. Racal-Vikonics, Inc., 101 F.R.D. 418, 419 (E.D. Pa. 1983). Since the precise boundaries of the Rule 26 relevance standard will depend on the context of the particular action, the determination of relevance is within the court's discretion. Bowman v. Gen. Motors Corp., 64 F.R.D. 62, 69 (E.D. Pa. 1974).

Nevertheless, the court is required, pursuant to Rule 26(b)(2)(C), to limit the scope of discovery, either on motion or on its own, where any one of three circumstances is attendant: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the

needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues.  The Court of Appeals has recognized that, while the scope of discovery under the Federal Rules may be broad, under appropriate circumstances the court has discretion to limit and circumscribe this scope. Bayer v. Betachem Inc., 173 F.3d 188, 191 (3d Cir. 1999); citing Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1322 (Fed. Cir. 1990).

DISCUSSION

This Court has diversity jurisdiction over the claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

Niester and NBT contend that TD Bank's account records and documents for Moore, Must Focus and NTB Links Right Price[3] are relevant and discoverable.  TD Bank claims that it cannot provide the documents requested because they are confidential under state law.  TD Bank also claims that the accounts of Moore and Must Focus are irrelevant to Niester and NBT's claim against the bank.

I.      Confidentiality of Bank Records

TD Bank argues that it cannot disclose the requested bank records because they are confidential under Pennsylvania law.  To support its contention, TD Bank cites McGuire v. Shubert, a case of an individual suing a bank for disclosing their bank account information (specifically the individual's net worth) to opponent's counsel in a property dispute matter.

---

[3] Plaintiffs, in their request for discovery, did not include a request for the account information of Butts.  Any argument regarding the discoverability of this account is therefore irrelevant because Butts's records are not among those sought by plaintiffs' motion.

McGuire v. Shubert, 722 A.2d 1087, 1088-89 (Pa. Super. Ct. 1998). The McGuire Court recognized a "duty on a bank and its employees to keep a customer's bank account information confidential" as "an implied contractual duty under Pennsylvania common law. . . ." Id. at 1091. However, the account information in question was not obtained through a formal discovery request but was obtained because a party to the property dispute was an employee at the bank. Id. at 1089. Here, the request for bank records is a formal request for discovery made pursuant to this litigation.

TD Bank attempts to distinguish its situation from that of Knight v. Northwest Savings Bank. 747 A.2d 384, 389 (Pa. Super. Ct. 2000). In Knight, the court held that the bank was immune from civil liability for disclosing the appellant's bank records in response to a subpoena issued in a child support action. Id. TD Bank asserts that unlike this case immunity arose from statues, 42 U.S.C. § 669(a) and 23 Pa. C.S.A. § 4304.1(e), that provide civil liability immunity to financial institutions that produce these types of records in child support actions.

However, TD Bank's potential liability for breaching an implied contractual duty is irrelevant. Even a formalized private agreement to keep materials confidential does not prevent the discovery of those materials. See Zoom Imaging, L.P. v. St. Luke's Hosp. and Health Network, 513 F. Supp.2d 411, 417 (E.D. Pa. 2007), holding that documents created by an outside consultant were discoverable despite confidentiality agreements; United States. v. Davis, 702 F.2d 418, 422 (2d Cir. 1983), granting discovery of material protected by a confidentiality agreement and recognizing that a private confidentiality agreement does not protect material from discovery as a formal protective order would; Grumman Aerospace Corp. v. Titanium Metals Corp. of Am., 91 F.R.D. 84, 87 (E.D.N.Y. 1981), holding a confidentiality agreement

5

with a consultant was not a basis for quashing a discovery subpoena in an antitrust case. Thus, TD Bank's claim that the accounts requested are not discoverable because they are impliedly confidential under Pennsylvania contract law is meritless.

II.     Relevance of Bank Records to UCC and Negligence Claim

Niester and NBT allege that the information they have requested regarding the accounts of Moore and Must Focus is relevant to their claim against TD Bank. TD Bank asserts that, notwithstanding the "NBT Links Right Price" account, the requested account information is outside of the purview of the alleged negligence and UCC violation alleged against the bank.

"[T]he facts and circumstances of a case determine and limit the relevancy of information sought in discovery." Cont'l Access Control Sys., Inc., 101 FRD at 419. Neister and NBT seek discovery of banking information for Moore, Must Focus and "NBT Links Right Price." In so doing, they seek: (1) the account that their checks were allegedly deposited into ("NBT Links Right Price,"); (2) the account to which the commission funds were allegedly transferred after deposit (Must Focus) and (3) the account of the individual who conducted the business of Must Focus, allegedly established the "NBT Links Right Price" account and orchestrated the alleged fraud (Moore). Neister and NBT are not seeking banking records of third-parties unrelated to the underlying facts of the claim. Thus, I find that the accounts requested are relevant.

Their request is also "reasonably calculated to lead to the discovery of admissible evidence" regarding the amount of lost commission allegedly suffered as a result of TD Bank's alleged negligence. See Fed. R. Civ. P. 26(b)(1). These records are relevant to Neister and NBT's claims because the records could provide proof of damage or loss, an element of

negligence.[4]

However, the alleged misdeeds of Moore and Must Focus did not begin until the end of 2006 when Moore allegedly approached Niester and NBT with a business proposition that ultimately led to this litigation and Niester and NBT's request for account documents extend beyond this time frame.  Insofar as they are requesting bank records that predate their dealings with Moore and Must Focus, these requests are likely irrelevant to the proceeding at hand.  Pursuant to Fed.R.Civ.P. 26(b)(2)(C)(i), I am required to limit the scope of discovery to a time frame that is not unreasonably cumulative.  See, e.g., Howard v. Rustin, 2008 WL 2008937, at *3 (W.D. Pa. May 2, 2008), limiting the date range of a discovery request pursuant to Rule 26.  Thus, the requested discovery for "NBT Links Right Price," Moore and Must Focus' bank records is limited to records created after November 30, 2006, the approximate date which Niester and NBT allege that Moore first approached them with the business proposal that ultimately lead to this litigation.  If Niester and NBT can demonstrate that bank records created prior to this date are relevant to their claims in the course of discovery, they may file a motion to expand the scope of discovery accordingly.

An appropriate Order follows.

---

[4] In Pennsylvania, the elements of a cause of action for negligence are:  "(1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) defendant's failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff."  NW. Mutual Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005).